# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Randy Lawrence Williams-Bey,<br><br>Defendant. | Case No. 19-cr-179 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

Douglas Micko, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Randy Lawrence Williams-Bey

Evan Gilead, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415 for the United States of America

HILDY BOWBEER, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Defendant Randy Williams-Bey's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 33].[1] Williams-Bey seeks to suppress three statements he made while in police custody. The motion was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1. The Court

---

[1] The parties' non-dispositive motions were addressed in a separate Order [Doc. No. 38]. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 32] will be addressed in a later report and recommendation, after the Court receives supplemental briefing. (*See* Nov. 19, 2019 Ord. [Doc. No. 48].)

held a hearing on the motion on October 1, 2019.  Williams-Bey filed a post-hearing memorandum in support of the motion [Doc. No. 46] on October 29, 2019, and the Government filed a post-hearing memorandum in opposition to the motion [Doc. No. 47] on November 11, 2019, at which time the Court took the motion under advisement.  For the reasons set forth below, the Court recommends that the motion be denied.

I.    **Background**

   A.    **Factual Background**

On February 12, 2019 police received a 911 call that a bank robbery had just occurred at a bank in Woodbury, Minnesota.  (Tr. at 10 [Doc. No. 41].)  Multiple police agencies, including the Woodbury Police Department and the St. Paul Police Department, responded to the alarm.  (*Id.* at 11.)  One of the bank employees was able to give the officers a vehicle description and license plate number for the car in which the suspect had driven away from the scene, which police used to determine a possible home address. (*Id.*)  The home belonged to Williams-Bey, whose car and license plate matched the description provided by the witness.  (*Id.*)  A short time later Williams-Bey was arrested by St. Paul police officers.  (*Id.* at 12–13.)

When Detective Sack and Officer Roddy of the Woodbury Police Department arrived at the scene, they took custody of Williams-Bey.  (*Id.* at 13.)  The officers substituted their own handcuffs for the ones the St. Paul police had used, conducted a brief pat-down search of Williams-Bey, and then put Williams-Bey in the back of their

squad car. (*Id.* at 13; Ex. 6 at 00:15–3:30.[2]) As part of the transfer process, Sack asked Williams-Bey if he had any weapons on him and Williams-Bey responded: "No. Wasn't no weapon used in the bank robbery." (Tr. at 14; Ex. 7 at 00:51.[3]) The officers had not previously mentioned the bank robbery and they did not ask any follow-up questions on the matter. (Tr. at 14; Ex. 7.) Williams-Bey had not yet been read the *Miranda* warnings.

Later, Officer Roddy drove Williams-Bey to the police station. Video recording from the backseat of the patrol car reveals that Williams-Bey initiated a conversation with Roddy in which Williams-Bey asked "Can I ask a question? . . . How did they catch me?" (Ex. 6 at 8:01; Ex. 5 at 8:29.[4]) Officer Roddy declined to answer and told Williams-Bey that the other officers would explain more later. (Ex. 6 at 8:09.)

Later that same day, Williams-Bey was questioned at the Washington County Narcotics Office by two Woodbury police detectives, Detectives Gort and Lund. (Tr. at 15–16.) The detectives read Williams-Bey the *Miranda* warnings and Williams-Bey stated he understood them. (*Id.* at 16–18; Ex. 1 at 5:10–5:44.) He then proceeded to confess to the robbery that had occurred that morning. (Ex. 1.)

---

[2] Exhibit 6 is the footage from Officer Roddy's body-worn camera. (Am. Ex. List [Doc. No. 43].)

[3] Exhibit 7 is the footage from Detective Sack's body-worn camera. (Am. Ex. List [Doc. No. 43].)

[4] Exhibit 5 is the footage from the backseat of Officer Roddy's squad car. (Am. Ex. List [Doc. No. 43].)

## II. Discussion

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In order to give power to the Fourth Amendment, the Supreme Court has established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). "[T]his judicially created rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* at 139–40 (internal quotation marks omitted). Stated differently, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144.

### A. Williams-Bey's Statement During the Transfer of Custody

Williams-Bey was initially taken into custody by the St. Paul police, but he was transferred at the scene to the custody of the Woodbury police. (Tr. at 13.) At that time, he had not been advised of his *Miranda* rights. Woodbury Police Detective Sack and Officer Roddy did the custody and handcuffs transfer. In connection with the transfer, Officer Roddy patted Williams-Bey down. Before Roddy did so, Detective Sack asked Williams-Bey if he had any weapons on him. (*Id.*) In response, Williams-Bey said "No. Wasn't no weapon used in the bank robbery." (Ex. 7 at 00:51.)

*Miranda* protections are required any time there is a "custodial interrogation."

4

*Miranda*, 384 U.S. at 444. Custodial interrogations include not only express questioning by an officer, but also any question, word, or action by an officer that is "reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *United States v. Cowan*, 674 F.3d 947, 958 (8th Cir. 2012). On the other hand, not all questions by officers to a suspect in custody amount to interrogation. *United States v. McLaughlin*, 777 F.2d 388, 391 (8th Cir. 1985). For example, officers are permitted to make "request[s] for routine information" (*United States v. Brown*, 101 F.3d 1272, 1274 (8th Cir. 1996) and otherwise ask questions "normally attendant upon arrest and custody" (*Innis*, 446 U.S. at 301). "A voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings." *United States v. Lawrence*, 952 F.2d 1034, 1036 (8th Cir. 1992).

Williams-Bey challenges the reasonableness of Officer Roddy's search prior to putting Williams-Bey in the Woodbury squad car, arguing that "Detective Sack and Officer Roddy could not harbor a reasonable belief that Williams-Bey was armed, as he was already arrested, in custody, and under constant watch of authorities." (Def. Mem. at 4.) The Court disagrees. The officers were assuming custody of someone suspected of armed bank robbery, and Officer Roddy would soon be sharing a car with him. It was unlikely that by the time the Woodbury police were on the scene Williams-Bey was still armed, but the Woodbury officers arrived after Williams-Bey had been taken into custody, and therefore could not know for sure whether or how thoroughly he had been

5

searched.[5]

Furthermore, an officer "need not be absolutely certain that the individual is armed" to conduct a protective search. *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002). Rather, the question is only if, given the totality of the circumstances, a reasonable officer would do the same. *See United States v. Green*, No. 18-CR-2006-LRR, 2018 WL 3742456, at *6 (N.D. Iowa, Aug. 7, 2018) (finding that, under the totality of the circumstances, a second officer was justified in conducting a "more thorough" second pat-down based on a suspicion that the suspect might be armed).

Williams-Bey's primary challenge is to the question Detective Sack posed immediately before his partner began the search: "You don't have any weapons on you at all?" (Ex. 7 at 00:50.) Williams-Bey argues that there "was no legitimate basis" for the question. (Def. Mem at 4.) But asking about the presence of weapons in connection with a body search would seem to be a quintessential example of a question "normally attendant upon arrest and custody." Detective Gort, who testified at the hearing, noted that it is typical for officers to ask about the presence of weapons before a search for the safety of both the suspect and the officer. (Tr. at 13.) Detective Sack's question was not designed to "elicit an incriminating response" (*id.*), but only to alert the officer to the presence of any dangerous objects. That concern was echoed by Officer Roddy, who asked as he conducted the search, "Just checking—no weapons? Anything that could hurt

---

[5] There is no evidence in the record whether Williams-Bey was in fact searched by St. Paul police officers before Officer Roddy arrived. As it turned out, Officer Roddy discovered a multi-purpose tool and knife attached to Williams-Bey's belt, which the prior search, if any, had apparently missed. (Ex. 6 at 2:06–2:15.)

6

me, hurt you, hurt any of us?" (Ex. 7 at 1:04–1:07.) It was *Williams-Bey's* decision to volunteer an incriminating statement ("Wasn't no weapon used in the bank robbery.") rather than simply answer the question put to him ("No."). Detective Sack's question therefore did not rise to the level of interrogation, and the Court concludes that no *Miranda* warnings were required before he posed it.

Even if the Court were inclined to conclude that Detective Sack's question was the sort likely to elicit an incriminating response, it would find that the question was permissible in service of public safety. "Under the public safety exception to the *Miranda* requirement, a suspect's answer may be admitted into evidence if it was obtained in response to a pre-*Miranda* question asked in furtherance of public safety and not designed solely to solicit testimonial evidence." *United States v. Everman*, 528 F.3d 570, 572 (8th Cir. 2008). Importantly, protection of public safety includes protection of the officers themselves. *United States v. Liddell*, 517 F.3d 1007, 1009 (8th Cir. 2008). The question posed by Detective Sack was "reasonably prompted" by a concern for his own safety, as well as that of Williams-Bey and others on the scene. *Lawrence*, 952 F.2d at 1036. Therefore, the Court finds the Detective Sack's question fell within the public safety exception to the *Miranda* requirement.

Accordingly, the Court recommends that Williams-Bey's motion to suppress the statement he made during the custodial transfer be denied.

### C. **Williams-Bey's Statement in the Patrol Car**

Williams-Bey also seeks to suppress a statement he made while being transported to the police station by Officer Roddy. Williams-Bey initiated the following

7

conversation with Roddy from the back of the squad car:

    Williams-Bey:    "Can I ask a question?

    Roddy:    "Uh, yes sir."

    Williams-Bey:    "How did they catch me?"

    Roddy:    "Uhh—you know what—uhh, I'm not going to discuss the details kinda of what's going on. I'm gonna let . . . it sounds like one of the—those guys might be coming to talk to you. I'm just giving you a ride. Um, they'll explain more about what's going on when we get up there. I'm just giving you a ride. That's kinda where it's at."

    Williams-Bey:    "Alright."

    Roddy:    "Sorry, I can't answer a whole lot for you right now, so."

    Williams Bey:    "No problem."

(Ex. 5 at 8:29; Ex. 6 at 8:01.) At the time of the conversation, Williams-Bey had not been advised of his *Miranda* rights. The government does not dispute that this conversation occurred while Williams-Bey was in custody, so the only question is whether the conversation amounted to an "interrogation."

"*Miranda* does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). An officer can even respond to a spontaneous conversation with a request for clarification, and that action is "not generally construed as interrogation for *Miranda* purposes if the question does not enhance the defendant's guilt or raise the offense to a higher degree. . . ." *Butzin v. Wood*, 886 F.2d

8

1016, 1018 (8th Cir. 1990) (internal quotations omitted).

Williams-Bey argues that because Officer Roddy knew Williams-Bey "had a tendency to talk about the case," Roddy should have offered the *Miranda* warnings immediately after Williams-Bey said "Can I ask a question?" rather than "entertain[ing]" the conversation.  (Def. Mem. at 5–6.)  Williams-Bey offers no caselaw to support the proposition that Roddy was obligated to interject a *Miranda* warning at that juncture, and the Court can find none.  Indeed, the Eighth Circuit has agreed that a spontaneous statement to an officer need not be suppressed even though the suspect had previously evinced a tendency to make incriminating statements.  *United States v. Waloke*, 962 F.2d 824, 828 (8th Cir. 1992).  In *Waloke* the suspect told officers "I did it" in the course of his arrest for assault and then, "during the ride from Waloke's house to the police station he stated, 'this guy was after me . . . wanting to fight and I got tired of it so I went outside and found something . . . I found a pipe and hit this guy in the face with it.'"  *Id.*  The Eighth Circuit upheld the district court's denial of the motion to suppress the second statement because it was volunteered.  *Id.* at 829.  The Eighth Circuit agreed that the officer was under "no obligation to give the *Miranda* warning" after the initial spontaneous incriminating statement.  *Id.*

As in *Waloke*, Williams-Bey volunteered his statement to Officer Roddy, unprompted.  So long as Roddy did not encourage the conversation with additional questioning, he was under no obligation to anticipate where the conversation was going, or otherwise attempt to head it off.  The Court therefore recommends that Williams-Bey's motion to suppress his statement to Officer Roddy in the squad car be denied.

### D. Williams-Bey's Statement to Detectives Gort and Lund

Finally, Williams-Bey seeks to have the Court suppress his statement to Detectives Lund and Gort on February 12, 2019, at the Washington County Narcotics Office. He contends that his *Miranda* waiver and subsequent statements were involuntary because he may have been under the influence of marijuana at the time.

Under *Miranda v. Arizona*, "the prosecution may not use statements ... stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. Those procedural safeguards are met when, "[p]rior to any questioning, the person [is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." *Stansbury v. California*, 511 U.S. 318, 322 (1994). Once warned, a person can waive his *Miranda* rights, but only if the decision is made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444. Such a waiver is only valid if it is free from any "intimidation, coercion or deception" and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994).

Williams-Bey does not contend that the officers intimidated, coerced, or deceived him, so the Court turns its attention to the second consideration: whether Williams-Bey waived his rights with "full awareness" of the consequences.

10

The Eighth Circuit has recognized that drug use is a factor in determining whether a waiver is voluntary, but it is not decisive. *E.g. United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008); *United States v. Contreras*, 372 F.3d 974, 977 (8th Cir. 2004); *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990). Rather, courts must "look to the totality of the circumstances and must determine whether the individual's will was overborne." *Gaddy*, 532 F.3d at 788 (quoting *United States v. Castro-Higuero*, 473 F.3d 880, 886 (8th Cir. 2007)).

Williams-Bey does not seem to argue that he *was* intoxicated—only that a reasonable officer should have suspected he was intoxicated and should have waited to conduct the interview until any intoxicant was out of his system. He points out that a glass pipe with marijuana residue was found in his car, suggesting the possibility of its recent use; that he disclosed to the detectives that he used marijuana; and that Detective Gort described the tone of the interview as "subdued." (Tr. at 17, 25–26.)

The government responds that none of this amounts to evidence that Williams-Bey was in fact under the influence of drugs when he gave his statement. While Williams-Bey told the detectives that he smoked marijuana, he did not indicate that he had used the drug that day or was then under the influence of it. (*See* Tr. at 17, 25.) Detective Gort testified that Williams-Bey did not exhibit any signs of being under the influence of drugs, such as garbled speech or slow response time. (Tr. at 26–27.)

The Court concludes that the record does not support a finding that Williams-Bey was under the influence of marijuana at the time of his interview. A history of drug use, possession of a used pipe, and a subdued demeanor do not indicate that a person is

11

*presently* under the influence of marijuana.  The video recording of the interrogation reveals that Williams-Bey, albeit somber and soft-spoken, was alert and articulate.  The Court finds credible Detective Gort's testimony that Williams-Bey did not convey, through his words or demeanor, that he was intoxicated or otherwise unable to understand his *Miranda* rights, or to waive them intelligently.  Moreover, even if the Court found Williams-Bey was under the influence when he spoke with the detectives, that would only be the beginning of the Court's analysis.  It would still have to evaluate the totality of the circumstances—of which Williams-Bey's supposed marijuana use would be but one—to determine if his will was overborne at the time he waived his rights.  *Gaddy*, 532 F.3d at 788.  Nothing in the record suggests that Williams-Bey's will was overborne at the time he waived his *Miranda* rights and agreed to speak with the detectives.

In short, the Court concludes Williams-Bey's waiver was made with "full awareness" of the consequences, and that his statement was voluntarily given.  *Jones*, 23 F.3d at 1313.  Accordingly, the Court recommends that Williams-Bey's statement to Detectives Gort and Lund not be suppressed.

### III.  Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Randy Williams-Bey's Motion to Suppress Statements, Admissions and Answers [Doc. No. 33] be **DENIED**.

Dated:  November 19, 2019         s/ *Hildy Bowbeer*
                                  HILDY BOWBEER
                                  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.