# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Randy Lawrence Williams-Bey,<br><br>Defendant. | Case No. 19-cr-179 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

Douglas Micko, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant Randy Lawrence Williams-Bey

Evan Gilead, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415 for the United States of America

HILDY BOWBEER, United States Magistrate Judge

      This case is before the undersigned United States Magistrate Judge on Defendant Randy Williams-Bey's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 32].[1]  Williams-Bey seeks to suppress evidence obtained from the execution of two search warrants.[2]  The motion was referred to the undersigned for a

---

[1] The parties' nondispositive motions were addressed in a separate Order [Doc. No. 38]. Defendant's Motion to Suppress Statements, Admissions, and Answers [Doc. No. 33] was addressed in a previous report and recommendation. (Nov. 19, 2019 R. & R. [Doc. No. 49].)

[2] Three search warrants were issued in this case to permit police to search William-Bey's home, car, and cell phone, respectively.  The Motion to Suppress initially challenged all

report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and District of Minnesota Local Rule 72.1.  The Court held a hearing on the motion on October 1, 2019.  Williams-Bey filed a post-hearing memorandum in support of the motion [Doc. No. 46] on October 29, 2019, and the Government filed a post-hearing memorandum in opposition to the motion [Doc. No. 47] on November 11, 2019, at which time the Court took the motion under advisement.  For the reasons set forth below, the Court recommends that the motion be denied.

## I.     Background

On February 12, 2019, police received a 911 call that a bank robbery had just occurred at a bank in Woodbury, Minnesota.  (Tr. at 10 [Doc. No. 41].)  Multiple police agencies, including the Woodbury Police Department and the St. Paul Police Department, responded to the alarm.  (*Id.* at 11.)  One of the bank employees was able to give the officers a vehicle description and license plate number for the car in which the suspect had driven away from the scene, which police used to determine a possible home address.  (*Id.*)  The home belonged to Williams-Bey, whose car and license plate matched the description provided by the witness.  (*Id.*)  A short time later Williams-Bey was arrested by St. Paul police officers.  (*Id.* at 12–13.)  Police subsequently obtained warrants to search Williams-Bey's home and car.  (Ex. 2, 3.)

---

three, but the Court has recently been advised that the government does not intend to offer into evidence any of the records seized from the cell phone, and Defendant has accordingly withdrawn that portion of the motion as moot.  (Nov. 19, 2019 Letter to Magistrate Judge [Doc. No. 50].).  This report and recommendation therefore addresses only the warrants issued for Williams-Bey's home and car.

## II. Discussion

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In order to give power to the Fourth Amendment, the Supreme Court has established "an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Herring v. United States*, 555 U.S. 135, 139 (2009). "[T]his judicially created rule is designed to safeguard Fourth Amendment rights generally through its deterrent effect." *Id.* at 139–40 (internal quotation marks omitted). Stated differently, "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144.

Williams-Bey moves for suppression of all physical evidence seized pursuant to the warrants to search his home and car. (Def. Mot. Suppress at 1 [Doc. No. 32].) Three search warrants were issued in the days following the bank robbery, and two are at issue here. (Nov. 19, 2019 Letter to Magistrate Judge [Doc. No. 50].) The first search warrant pertained to William-Bey's car, where police seized a number of items, including a Samsung cell phone and a brown bag with $8,268.00 inside. (Ex. 3.) The second authorized a search of Williams-Bey's home, where police seized "one pair Men's Phat Farm, black in color, lace-up shoes." (Ex. 2.) He argues generally that "any search warrant issued in this case was issued without a sufficient showing of probable cause in

3

supporting the affidavit, and was therefore issued in error by the United States Magistrate Judge and that the search warrant involved was executed in an illegal and unlawful manner, and not in good faith." (Def. Mot. Suppress ¶ 1.)  Williams-Bey does not identify any particular respect in which the warrants are lacking or the execution of the warrants was improper, but has asked the Court to conduct a "four-corners review," which the Court construes as a challenge to the probable cause determination underlying the warrants.  (Def. Post-Hearing Mem. at 1 n.1 [Doc. No. 36].)  *See United States v. Edwards*, 180 F. App'x 618, 619 (8th Cir. 2006) (deciding whether "information within the four corners of the affidavit submitted in support of the search warrant application established probable cause"); *United States v. Leichtling*, 684 F.2d 553, 555 (8th Cir. 1982) (stating "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause").

When making a probable cause determination "a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and [it] owe[s] substantial deference to the determination of probable cause by the issuing judge." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996).  "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000).  "Probable cause . . . does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (internal quotation marks omitted) (omission in original).  The affidavit must

4

establish a "nexus . . . between the item to be seized and criminal behavior." *Warden v. Hayden,* 387 U.S. 294, 307 (1967). There must also be a nexus between the contraband and the place to be searched. *United States v. Tellez,* 217 F.3d 547, 550 (8th Cir. 2000). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge,* 165 F.3d 655, 657 (8th Cir. 1999). Ultimately, probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

Even with probable cause, a search may violate the Fourth Amendment if conducted pursuant to a search warrant that is not sufficiently definite. *See, e.g.*, *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Stanford v. Texas*, 379 U.S. 476, 485–86 (1965); *United States v. Kail*, 804 F.2d 441, 444–45 (8th Cir. 2011); *United States v. Fredrickson*, 846 F.2d 517, 519 (8th Cir. 1988). This "particularity" requirement "ensures that the search will be carefully tailored to its justifications." *Garrison*, 480 U.S. at 84. "The degree of specificity required in applying the particularity requirement is flexible and may vary depending on the circumstances and the types of items involved." *Kail*, 804 F.2d at 445 (internal quotation marks omitted). In other words, the particularity requirement is met if the description of things being sought is "as specific as the circumstances and nature of activity under investigation permit." *United States v. Martin*, 866 F.2d 972, 977 (8th Cir. 1989) (internal quotation marks omitted).

All that said, search warrants are presumptively valid. *See Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005).

5

The warrant to search Williams-Bey's car was applied for by Kim Richardson, a Woodbury police officer, on February 12, 2019. (Ex. 3 at 2.) The warrant begins by describing Richardson's credentials and experience, then describes the robbery that occurred that morning at a Wells Fargo bank in Woodbury, Minnesota. (*Id.*) A witness to the robbery had identified the type of vehicle the suspect drove as a "silver Ford Sport or Edge" with the license plate ###RVC. (*Id.*) That plate was registered to a black Ford truck in a small town outside the Twin Cities. (*Id.*) Since the plate was obviously incorrect, the officers "started running combinations of that license plate['s digits]" until they found a very similar plate—###VBC[3]—on a 2013 silver Ford Edge. (*Id.*) That car was registered to Randy Williams-Bey, whose address, as listed on his driver's license, was *** Forest St. in St. Paul. (*Id.* at 3.) Police went to that address and soon after Williams-Bey arrived in the 2013 silver Ford Edge. (*Id.*)

The application for a warrant to search the car was tailored to certain items connected to the robbery—"the black jacket, black fake beard, black ski mask, latex gloves, darker colored bag with United Family Medical, electrical tape and approximately $8,253.00"—and any electronic devices that could be "used as a means to communicate with other[s] while committing a crime," such as a cell phone, laptop, or GPS device. (*Id.* at 3–4.)

The application for the warrant to search Williams-Bey's home was signed under

---

[3] The first three numbers of the license plate as recalled by the witness were identical to the first three numbers of the license plate on the silver Ford edge registered to Williams-Bey, but are redacted here for purposes of privacy.

oath by St. Paul Police Sergeant Keller, who compiled information from police in Woodbury, Minnesota and Hudson, Wisconsin. (Ex. 2 at 2.) The affidavit lists Keller's background and experience, then describes a previous bank robbery that occurred at a Wells Fargo in Hudson, Wisconsin on May 31, 2018. (Ex. 2 at 2.) In that case, the robber was an African American male "with light brown skin with a black beard that appeared to be fake. The male was believed to be in his 40's for age and 5 feet 5 and 150 pounds." (*Id.*) He also wore dark sunglasses, a winter stocking hat with a wide dark-colored band at the bottom, a button-up checkered shirt, and black shoes or boots. (*Id.*) The suspect entered the bank and spoke to teller Ashley Brandt, who reported that he said, "Everyone on the ground now," and "Open the drawer and get all the money now" and "Hurry up, hurry up. Don't press the button or I'll pop you in the head." (*Id.*) He kept his right hand in a brown plastic grocery store bag throughout the robbery. (*Id.* at 3.) Witnesses did not see a car drive away, and no suspect was arrested. (*Id.*)

      The warrant application goes on to describe the facts surrounding the robbery of the Wells Fargo bank in Woodbury, Minnesota, with which Williams-Bey is now charged. (*Id.*) According to witnesses at the Woodbury bank, the robber was "an African American male, approximately 5 feet 9 or 5 feet 10 with a slender build of 160 pounds. The suspect wore a black jacket with a black hood pulled up. The suspect was wearing dark-colored sunglasses and had a black beard." (*Id.*)

      The application then lays out the process by which officers connected the car to Williams-Bey's home address, where they met and arrested him. (*Id.*) It recounts that Williams-Bey later spoke with Woodbury police detectives and confessed to the robbery.

7

(*Id.*) According to the warrant application, during that conversation Williams-Bey described how he "kept his right hand in a bag and threatened to shoot people during the Woodbury Wells Fargo robbery." (*Id.*)

The application further states that six days after the Woodbury robbery, Ashley Brandt, the teller from the Hudson bank, called police to say that she had seen Williams-Bey's picture in the news in connection with the Woodbury robbery. (*Id.*) She told officers that she was "95–100 percent positive" that Williams-Bey was the man who had robbed her bank and that her co-worker, who had been present during the Hudson robbery, agreed. (*Id.*)

On these facts, police sought a warrant to search Williams-Bey's home for evidence that would connect Williams-Bey to the Hudson robbery in 2018. Specifically, police were looking for:

1. Winter stocking cap described as having no tassle [sic] on top, the bottom portion having a wide band of a dark color, possibly green or black; above that are two parallel thinner stripes of a similar color and grey on top.
2. A collared, short sleeve button up shirt with a checkered design with a color combination of either green and black checks or grey and black checks.
3. Laced up shoes or boots that were all black in color to include the side of the sole and heel.

(Ex. 2 at 1.) Based on the foregoing, the Court is satisfied that there was a substantial basis for the issuing judges to conclude that probable cause existed for both search warrants. Both describe in detail the events and the reasoning leading up to the search warrant applications. In the case of the warrant to search the car, the affiant provided a step-by-step description of the process by which police linked the witness's vehicle

description and recollection of a license plate number to Williams-Bey's plate, car, and home address. This explanation provides a substantial basis for the issuing judge to conclude there was probable cause to believe Williams-Bey's 2013 silver Ford Edge was the car seen leaving the scene of the crime and would therefore contain evidence of the crime and/or evidence linking Williams-Bey to it.

Likewise, in the case of the warrant to search Williams-Bey's house, the application was highly detailed and tailored to a search for the clothing worn by the robber of the Wells Fargo bank in Hudson, Wisconsin. Given the numerous similarities between the two events, there was probable cause to believe Williams-Bey was connected in the first robbery, such that "a reasonable person could believe there is a fair probability" that evidence of the crime would be found in his home. *Fladten*, 230 F.3d at 1085.

Because the Court concludes that the search warrants for Williams-Bey's home and car were supported by probable cause and were particular as to the items being sought, the Court recommends that Williams-Bey's Motion to Suppress be denied.

### III.   Recommendation

Based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Randy Williams-Bey's Motion to Suppress Evidence [Doc. No. 32] be **DENIED**.

Dated: November 21, 2019         s/ *Hildy Bowbeer*
                                 HILDY BOWBEER
                                 United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in D. Minn. LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.