UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-0179 (WMW/HB) |
| Plaintiff, | |
| v. | **ORDER ADOPTING REPORTS AND RECOMMENDATIONS** |
| Randy Lawrence Williams-Bey, | |
| Defendant. | |

Before the Court are the November 19, 2019 and November 21, 2019 Reports and Recommendations (R&Rs) of United States Magistrate Judge Hildy Bowbeer, (Dkts. 49, 51), which recommend denying Defendant Randy Lawrence Williams-Bey's motions to suppress statements and evidence respectively. Williams-Bey filed timely objections to the November 19, 2019 R&R, and Plaintiff United States of America responded. For the reasons addressed below, the Court overrules Williams-Bey's objections and adopts the R&Rs.

**BACKGROUND**[1]

An individual robbed a bank in Woodbury, Minnesota, on February 12, 2019. After receiving descriptions of the perpetrator and his vehicle, law enforcement officers of the Saint Paul Police Department identified Williams-Bey as the perpetrator and arrested him near his home on the day of the robbery.

---

[1]    The relevant factual and procedural background is addressed in detail in the R&Rs and need not be repeated at length here.

Detective Sack and Officer Roddy of the Woodbury Police Department arrived at the scene of Williams-Bey's arrest after he had been handcuffed. These Woodbury Police officers were taking over the custody of Williams-Bey from the Saint Paul Police officers. Before putting Williams-Bey in their squad car, the Woodbury Police officers decided to conduct a protective search of Williams-Bey's body.[2] Detective Sack asked Williams-Bey whether he physically possessed a weapon. Williams-Bey responded: "No. Wasn't no weapon used in the bank robbery." At this point, Williams-Bey had not received a *Miranda* warning.

Officer Roddy drove Williams-Bey to the police station. While in the back of the squad car, Williams-Bey initiated a conversation with Officer Roddy by asking, "Can I ask a question?" When Officer Roddy responded, "yes," Williams-Bey asked, "How did they catch me?"

At the police station later that same day, Detectives Jeffrey Gort and Lynn Lund of the Woodbury Police Department questioned Williams-Bey about whether he was involved in the robbery. Prior to questioning him, Detective Lund read Williams-Bey the *Miranda* warnings, and Williams-Bey stated that he understood his rights. Williams-Bey then confessed to committing the robbery.

Williams-Bey now moves to suppress the statements that he provided to the law enforcement officers on February 12, 2019, and to suppress the evidence seized pursuant

---

[2]     The record is silent as to whether the Saint Paul Police officers had conducted a protective body search of Williams-Bey before the Woodbury Police officers arrived at the scene.

to the warrants to search his home and car. Following an October 1, 2019 evidentiary

hearing, the magistrate judge issued two R&Rs recommending the denial of Williams-

Bey's motions to suppress. Williams-Bey filed a timely objection to the November 19,

2019 R&R, which addresses the motion to suppress his February 12, 2019 statements. And

the United States filed a timely response.

## ANALYSIS

### I.      Williams-Bey's Objections to the November 19, 2019 R&R

This Court reviews *de novo* any aspect of the November 19, 2019 R&R to which

Williams-Bey objects. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3); LR

72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

Williams-Bey objects to the R&R's recommendations not to suppress his three statements

made to the police.

"No person shall . . . be compelled in any criminal case to be a witness against

himself." U.S. Const. amend. V. A district court may not admit in evidence any statement

of a suspect made during custodial interrogation unless the prosecution "demonstrates the

use of procedural safeguards effective to secure the privilege against self-incrimination."

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Prior to a custodial interrogation, a law

enforcement officer must obtain the voluntary, knowing, and intelligently granted waiver

of a suspect's *Miranda* rights. *Id.* The Court addresses each of Williams-Bey's statements

and objections in turn.

## A.    Williams-Bey's Statement During the Transfer of Custody

During the transfer of custody, Detective Sack asked Williams-Bey whether he physically possessed any weapon. In response, Williams-Bey said: "No. Wasn't no weapon used in the bank robbery." Although Williams-Bey was in custody when he responded to the question, he had not been given the *Miranda* warnings.

The "*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning" or " any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). The R&R concludes that Detective Sack's question that led to Williams-Bey's responsive statement was not designed to "elicit an incriminating response." *See id.* at 301. Instead, this question was a quintessential example of a question "normally attendant to arrest and custody." *See id.* Even if likely to elicit an incriminating response, the R&R concludes, the question was permissible as it satisfies the "public safety" exception. *See United States v. Everman*, 528 F.3d 570, 571 (8th Cir. 2008). Williams-Bey objects, arguing that the "public safety" exception does not apply after the suspect is in custody and handcuffed.

"Under the public safety exception, a suspect's answer may be admitted into evidence if it was obtained in response to a question asked in furtherance of public safety and not designed solely to solicit testimonial evidence, even if *Miranda* warnings had not yet been given." *Id.* at 572. The public-safety exception includes the safety of the police officers themselves. *Id.* Accordingly, a "concern for the safety of the searching officer

4

and others nearby" may justify a protective search of the suspect's body when the officer

*reasonably* concludes that the suspect may be armed. *United States v. Dortch*, 868 F.3d

674, 678 (8th Cir. 2017). An officer "need not be absolutely certain that the individual is

armed" to conduct a protective search. *United States v. Roggeman*, 279 F.3d 573, 578 (8th

Cir. 2002) (internal quotation marks omitted). Rather, the question is whether *a reasonable*

*officer* would have conducted a protective search under similar circumstances. *Id.*

Here, Detective Sack and Officer Roddy were assuming the custody of Williams-

Bey in order to transport him to the police station in their squad car. Under these

circumstances, it was reasonable for the officers to conduct a protective search of Williams-

Bey's body. *See Curd v. City Court of Judsonia, Ark.*, 141 F.3d 839, 842 (8th Cir. 1998)

("Warrantless searches incident to a custodial arrest are justified by the reasonableness of

searching for weapons, instruments of escape, and evidence of crime when a person is

taken into official custody and lawfully detained." (Internal quotation marks omitted.)).

Detective Sack's question to Williams-Bey about his possession of any weapon before the

officers commenced their search was "reasonably prompted by a concern for the public

safety," including the safety of Detective Sack and Officer Roddy. *See Everman*, 528 F.3d

at 572 (internal quotation marks omitted). Williams-Bey's responsive statement falls

squarely within the "public safety" exception to the exclusionary rule.

Williams-Bey argues that the analysis changes when the suspect already is in

custody and handcuffed. But he provides no legal authority that supports this proposition.

And the Court's research has located none. *Cf. United States v. Liddell*, 517 F.3d 1007,

1009–10 (8th Cir. 2008) (holding that the "public safety" exception applies even after the

defendant has been restrained); *United States v. Williams*, 181 F.3d 945, 953–54 (8th Cir. 1999) (same).  Accordingly, Williams-Bey's objection to the denial of his motion to suppress his responsive statement made during the transfer of custody is overruled.

**B.      Williams-Bey's Statement in the Squad Car**

While in the squad car, Williams-Bey initiated a conversation with Officer Roddy by requesting permission to "ask a question."  When Officer Roddy responded, "yes," Williams-Bey asked, "How did they catch me?"  No *Miranda* warning had been given prior to this exchange.

The R&R concludes that, although Williams-Bey was in custody, his second statement—"How did they catch me?"—was a "spontaneous statement made during a conversation not initiated by the officer."  *See United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005).  As such, this statement is not subject to the exclusionary rule.  Williams-Bey objects.  Because the officers knew that he had a tendency to talk about the case, Williams-Bey argues, Officer Roddy should have given him his *Miranda* warnings, rather than entertaining his question.  Again, Williams-Bey provides no legal authority to support this contention.

Contrary to Williams-Bey's position, the United States Court of Appeals for the Eighth Circuit has held that a spontaneous statement to an officer need not be suppressed even when the suspect previously had made incriminating statements.  *See United States v. Waloke*, 962 F.2d 824, 828–29 (8th Cir. 1992) (concluding that the officer was under "no obligation to give the *Miranda* warning[s]" after the suspect made a spontaneous incriminating statement).  *Miranda* bars only statements made by a defendant in custody

that both have not been preceded by a proper warning and are made in response to interrogation. *Id.* The Fifth Amendment to the United States Constitution does not preclude the admission of statements that "a defendant in custody volunteers and that are not the product of any interrogation by the police." *Id.* Williams-Bey does not dispute that his spontaneous statement was not the product of any interrogation by Officer Roddy. Williams-Bey initiated the conversation without giving Officer Roddy any indication as to what the subject of his question might be. Under these circumstances, Officer Roddy was under no obligation to provide Williams-Bey the *Miranda* warnings. Williams-Bey's spontaneous statement need not be suppressed.

Accordingly, Williams-Bey's objection regarding his spontaneous statement to Officer Roddy is overruled.

### C.   Williams-Bey's Confession

During police interrogation after the *Miranda* warnings had been given, Williams-Bey confessed to the bank robbery. The R&R concludes that Williams-Bey waived his constitutional right to remain silent prior to giving his confession. In his objections, Williams-Bey asserts that the prosecution cannot demonstrate that he voluntarily waived his right to remain silent because he may have been under the influence of marijuana during the interrogation.

A district court's analysis of a *Miranda* waiver is two-fold. First, the court determines whether the waiver was voluntary, *i.e.*, whether it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, the court determines whether the suspect's waiver of a

constitutional right was knowing and intelligent, *i.e.*, whether it was made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

Williams-Bey does not dispute that he knowingly and intelligently waived his right to remain silent. Nor does he assert that he was in fact under the influence of marijuana, which *may* render his waiver involuntary. Instead, Williams-Bey objects on the ground that the United States cannot prove that his waiver was voluntary because the interrogating officers should have suspected that he was intoxicated at the time of his interrogation. To support his position, Williams-Bey identifies three factors: (i) he told the interrogating officers that he was a drug user, (ii) police officers found a pipe in his vehicle at the time of his arrest, and (iii) the interrogating officers observed his "subdued" manner during the questioning.

The totality of the circumstances, however, undermines Williams-Bey's contention that his waiver was not voluntary. The facts in evidence do not even demonstrate that Williams-Bey had smoked marijuana on the day of his arrest and interrogation, let alone that he was intoxicated. To the contrary, the evidence shows that Williams-Bey was fully alert during the entire time between his arrest and his interrogation. Williams-Bey was alert and articulate during the interrogation. He neither sounded nor appeared to be under the influence of any substance that overbore his will. He indicated that he understood the *Miranda* warnings he received, and he acted in a manner consistent with such understanding. Accordingly, the Court finds that Williams-Bey voluntarily, knowingly, and intelligently waived his constitutional right to remain silent. *See, e.g.*, *United States v.*

*Tyson*, 360 F. Supp. 2d 798, 806 (E.D. Va. 2005) (finding voluntary consent because, although defendant "admitted that he had smoked a quantity of marijuana, he was alert and responsive to the agents' inquiries and did not appear to the agents to be under the influence of any narcotics"); *Dennis v. Mitchell*, 68 F. Supp. 2d 863, 894 (N.D. Ohio 1999) (finding the suspect voluntarily, knowingly, and intelligently waived his constitutional rights despite his claim that he had "smoked 'two joints' of marijuana earlier in the evening of his interview," because nothing in his behavior caused the interviewers to believe that he was intoxicated).

Williams-Bey's objection to the admission of his confession, acquired after *Miranda* warnings, is overruled.

## II.    Clear-Error Review of the November 19, 2019 and November 21, 2019 R&Rs

The Court reviews for clear error the remainder of the November 19, 2019 R&R, to which no specific objection has been made. *See* Fed. R. Crim. P. 59 advisory committee's note (explaining that *de novo* review of a magistrate judge's recommendation is required "only where there is an objection" (citing *Peretz v. United States*, 501 U.S. 293 (1991))); *accord* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). And because Williams-Bey did not file a timely objection to the November 21, 2019 R&R, which addresses his motion to suppress certain physical evidence, the Court also reviews this second R&R for clear error. *See* Fed. R. Crim. P. 59 advisory committee's note. Having carefully performed this review

without finding any clear error, the Court adopts both the November 19, 2019 and November 21, 2019 R&Rs in full.

## ORDER

Based on the R&Rs, the foregoing analysis, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.   Defendant Randy Lawrence Williams-Bey's objections to the November 19, 2019 R&R, (Dkt. 52), are **OVERRULED**.

2.   The November 19, 2019 R&R, (Dkt. 49), is **ADOPTED**.

3.   The November 21, 2019 R&R, (Dkt. 51), is **ADOPTED**.

4.   Defendant Randy Lawrence Williams-Bey's motion to suppress evidence, (Dkt. 32), is **DENIED**.

5.   Defendant Randy Lawrence Williams-Bey's motion to suppress statements, (Dkt. 33), is **DENIED**.

Dated:  January 10, 2019                                     s/Wilhelmina M. Wright
                                                            Wilhelmina M. Wright
                                                            United States District Judge